All right, let's get the next case up here. Okay, our next case is case number 24-30540, Robert Boudreau v. Axiall Corporation et al. v. Yellow Rock, which is the appellant, and so we will have Kessler speak on behalf of Yellow Rock. Thank you, Your Honor. My name is Jeffrey Kessler. I'm of the Shera Garner Law Firm in New Orleans, here on behalf of Yellow Rock, the appellant. This appeal concerns the public's fundamental right of open access to judicial records, which belong to the public. The consequences of the district court's ruling denying Yellow Rock's motion to intervene and thus to unseal those judicial records is to ensure that improvidently sealed documents will remain wrongly sealed into perpetuity. This cannot be the law. The records at issue here- Okay, but what about if there was some case from 50 years ago? Could y'all just go in and say, undo it now and try to go find the parties that had sealed it? Because sometimes sealing is not done properly, but there are things that need to be kept private. So how can something later that's already done be something y'all come into? But many courts have recognized, courts from across the country have recognized that a non-party can come in afterward to vindicate the public interest. None of the cases we've dealt with have dealt with the situation of 50 years. But there are cases we've cited in our briefs that reference a gap of several years. Yeah, but I'm trying to understand that. We haven't ruled on that, so I'm trying to understand why that's okay, particularly in a case that was settled as opposed to tried. Because in this instance, a summary judgment ruling was rendered, and the summary judgment ruling relied in great part on the sealed documents. There were four specific attachments to the summary judgment ruling that were sealed, which collectively were cited 30 times in the summary judgment ruling. That renders them adjudicative documents. This is not about discovery materials. Our motion to intervene, our motion to unseal has nothing to do with private matters in discovery, only when they enter the public record, i.e., as being attached to a judicial filing. You seem to be arguing the altruistic theory that the public has a right to know what's in court records, and they should be sealed very sparingly, all of which is fine. Has your client ever tried to unseal records in any other case? No, our client has not sought to do that. There obviously are, you know, other public entities. There is a state court case, isn't that correct? There is a state court case, and we tried to get the documents through state court. We were stonewalled, and in light of the practices of that state court, which basically would set discovery motions several months out, at the time, we thought the quickest and easiest solution, especially in light of the guiding case law of Bin Ho'Ali . . . When was the state court case filed? It was filed in 2023. We'd amended the pleadings shortly after the subsidence began in the Sulphur Mines Salt Dome in late 2023. The discovery at issue was sent out, I believe, in late 2023, and the responses were received February 2nd of 2024. Your argument is that you're here because you're trying to end-run the state court ruling, the state court discovery ruling, isn't that correct? Putting aside all the argument about how the public has a right to know what's under seal, and we should not seal things except very sparingly, you're here because you want the discovery that you were denied at state court, isn't that correct? Well, we ultimately, curiously enough, our opponents provided us with the four sealed exhibits shortly after our appellate brief was due. We're still here because we recognize the public interest . . . Well, but that's why I'm wondering, because, yes, you have gotten it in state court. Why not file it in state court? You got it through discovery. Why don't you just file it in state court? And that way, if there is something that Westlake is saying, no, no, no, no, no, this is too private, the judge could take a look and say, okay, well, pages 1, 2, and 5 are fine, but 3 and 4, yeah, those are private, and we'll leave them in sealed arena. Why not? Because they are fundamentally public records, and even if we proceed in state court, they still may be produced subject to any restrictions imposed by the state court. For instance, when we did receive them, they were stamped as confidential, highly confidential. Right, and I understand that, but why can't you try to . . . I mean, to me, it makes so little sense to come to a settled case in federal court and go get the district judge to have to kind of look again and all the people come back in. When you have the pieces of paper that you want the public to have, like I said, why not file them in the state court? If there is privacy in some of it that should remain sealed, okay, it should remain sealed, but if not, well, then it comes out the window and you're done in a case that is pending where the judge is working on the pending case as opposed to coming from the past two years later to undo things and get everybody back in action that was settled. Right. I hear your point, Your Honor, but when you said that the judge should look at it again, it appears that it was just a gentleman's agreement with no analysis whatsoever. And in fact, the order itself on those four documents itself is sealed. Other sealed filings in the case were simply four to five sentences of boilerplate motion. But the judge clearly did look at it because you said the judge ruled based on it. While the judge could have and should have been more specific about why these were sealed in the federal court, nonetheless, the judge did see them. And if they were ridiculous, some newspaper article or something, well, obviously, that shouldn't be sealed. Everybody's read that. Obviously, the judge did not see that or think that. But either way, whichever way you went, if we ended up reversing, we would have to send back and have the district judge take a look page by page, maybe paragraph by paragraph. That is very important because as I said, you could have a piece of paper that says, Judge Katharina Haynes on the Fifth Circuit, all of that is very public, but then what if in the middle of it, it has my social security number? I hope that's private. Of course, yes. Nothing we are arguing says that all the materials shall be categorically across the board put in the public record without further review. There still is the opportunity and the obligation for the page by page, line by line analysis. That's what this court's precedent calls for, from Bin Hawali, from June Medical Services, from IFG Port. The problem is that the documents were improvidently sealed across the board without any showing whatsoever. Bin Hawali said it's an abuse of discretion for the court to seal it without making note of the heightened burden and without undertaking the page by page, line by line analysis. The documents in question are sealed in their entirety as to the particular exhibits as well as the underlying motion to seal itself. And again, we come back to the principle of if this appeal is denied, the documents will remain sealed potentially into perpetuity. That cannot be— But like I said, these documents you very easily could make public in the state court. Well, some of them. There's also additional pleadings. For instance, the underlying motion to seal itself. I don't know if we would get that. There were other documents which were sealed subsequently to the four summary judgment ruling—four summary judgment exhibits that pertained to certain other exhibits in the case. I don't believe a ruling was rendered as to those subsequent motions, but I don't know if we would be able to get those. And that argument presumes that a motion to compel in state court would automatically prevail. We don't know that. We hope we would, but we don't know that. In light of bin Hawali and the presumption of public access to judicial materials, materials in the public record which belong to the public, they should be unsealed. Well, but as Judge Englehart said, y'all aren't running around getting all this other public stuff. You're doing the one thing that matters to you all in your lawsuit. But nonetheless, we have also said this is a matter of public record, of public record. But I mean— And we're backing that up. We're here today. The judge didn't seem to think y'all were being truthful on that. We respectfully disagree with that categorization, and I refer you to the ample record evidence that shows this is a matter of substantial public concern. In particular, the Louisiana Department of Energy and Natural Resources has dedicated websites specific to the instability at the Sulphur Mine Salt Dome, and there's a page dealing with the ownership. Why wasn't there an objection by your client or anyone else, for that matter, at the time the records were sealed while the case was pending? And you're right. It's a matter of public concern. It's something that's been spoken about and covered in the media,  But at the time, you would think someone, yourself, I should say your client or someone with the public interest group, would say, hey, these documents, we have a right to know. We want these unsealed. These are improperly sealed. Well, first reason is our client did not know about the lawsuit. We were not monitoring the docket of every case around. Yes. Yes. Yes. The public interest arises out of the instability at the Sulphur Mine Salt Dome. That instability began in September of 2023, a couple of years after the documents were sealed. So even if we knew about the lawsuit, we wouldn't have had an interest at that time because the instability that impaired our client's mineral rights, that had not occurred. The LDNR websites had not occurred or did not go up at that time. The public briefings had not occurred because the instability was a couple of years out. We agree with you. Timeliness is a factor. How far back would you argue does a party have to unseal documents? In 2002, I probably sealed documents in the building next door. I probably signed an order. Would those be subject to someone intervening in a closed lawsuit, whether it was a judgment or a settlement, and unsealed documents that were sealed that long ago? The Stallworth case from this circuit gives us a four-factor test on how to consider. The first is when did the movement know that his rights would not be vindicated by the parties? And if, in your instance, if someone knew about it for 10 years and sat on it, then that's a clear rejection. The second one, the prejudice, that's another legal error that the court made because it asked the wrong question. What the district judge said is the parties would be prejudiced by having to go through the, if intervention is granted, by having to go through the time and expense. But this court's precedent in Ford v. City of Huntsville says that is not the test. The prejudice is what prejudice accrued as a result of the movement sitting on his hands. In this instance, we did not sit on our hands. We raised the issue within a matter of minutes. Okay, well, let's talk about the intervention because that was the decision, and the judge has high discretion in deciding whether to allow intervention. So why don't you assume arguendo you have to intervene, okay, in order to be heard from? I know that you dispute that, but let's assume arguendo. Why wouldn't we defer to the judge's discretion on that? This court's precedent in Hernandez says that, yes, it is subject to abuse of discretion, but if it turns on a legal error along the way, then it's de novo. In this instance, we contend that there were multiple legal errors. First, the timeliness issue, the prejudice issue that I spoke of, where Ford v. City of Huntsville squarely rejects the approach that the magistrate judge took in his report and recommendations. Secondly, the standing issue that we contend that they, the court misapplied deus and gave a very overbroad reading of deus to suggest that no one can articulate on behalf of the public the denial of records. That was a legal interpretation, and that's a mistaken one. Hernandez itself said that that interpretation of deus is untenable. As long as a party asserts a public interest, its motives do not matter, and that's what this court held in Holy Land, which, by the way, didn't even require an intervention. It allowed the unsealing of documents, even though it was a criminal matter into which a party could not intervene, but made a specific statement that the private motivations of the party do not go to the question of whether it should or should not be unsealed. We've cited cases from other circuits and other courts across the country. The Waldrop case from California said the motivations do not matter. That cited a U.S. Second Circuit case as well. We contend the court may have engaged in a legal error in its standing analysis and in its prejudice analysis. Those legal errors are subject to de novo review, not the abuse of discretion. So I do want to also note that the court's hostility to our position is underscored by the fact that it tried to strike or held that our motion to unseal itself should be stricken. Now, the motion to unseal seeks to vindicate the public's right of access to the judicial records, yet the court held that this motion itself should be stricken. That is a clear irony. The solution to the failure to make judicial records publicly available is not to strike additional judicial records. As far as the timeliness issue with respect to the Stallworth factors, the magistrate agreed with us as to the first one, that we raised our claim promptly within a matter of a few weeks of becoming aware and when it became ripe. The second issue is the one where we have a severe problem. That's the one implicated by the Ford v. City of Huntsville issue. The language on that, I can read the key language for you on that, but it said in effect that the test for prejudice is not measured by if they're prejudiced if you're allowed to intervene, but rather were they prejudiced by the movement's delay after the movement first learned that it had a basis to intervene. And that approach, the court asked the wrong question analytically and it got the wrong answer. That constitutes reversible error. And I see my time is just about up. All right. You'll have time for rebuttal. Thank you. Go ahead and hear from Colin O'Rourke for Westlake. Good morning, Your Honors, and may it please the Court, Colin O'Rourke on behalf of FLE Westlake U.S. 2 LLC. We're here on an appeal of the most discretionary kind of ruling from a district court, a denial of a permissive intervention in a closed case. Judge Walter in the district court laid out three distinct independent paths to affirmance here, any of which are sufficient to deny this appeal. The first is that Yellow Rock required but did not have Article III standing. The second is that Yellow Rock's intervention was untimely under Rule 24 and the Stallworth factors. And the third was that Yellow Rock's permissive intervention could and should be denied under Rule 24 more broadly. I'd like to first talk about standing, as I think we need to, because standing is a jurisdictional issue, and this Court must address that before it can get into the merits of the intervention issue. This Court has held that in the absence of a live case or controversy, a non-party intervener needs its own independent Article III standing. And while this Court has said that vindication of a public interest can create that standing, what it has not said is that a non-party seeking records for its own private purposes and pending unrelated litigation has the requisite standing. That's what the Court held in Deas. That's what this Court held in Allen-Peroni. Yellow Rock makes a hollow claim, I think Your Honors identified that, that it is seeking to invoke the public interest here and that just saying those magic words grants it the standing it needs. Yellow Rock provided the lower court with chapter and verse about what it actually needed these records for. Attached to its intervention was its petition in the state court case, its amended petition. It attached the discovery request to Yellow Rock. It attached the objections and responses by Westlake to Yellow Rock's discovery. It essentially briefed what would have been its state court motion to compel for the district court. That was what was before the district court when it made its decision. It had all these private, specific to Yellow Rock reasons why it needed these documents. Yellow Rock talked about the public interest now. It talked about the subsidence issues it alleges are happening in the Sulphur Mines Dome. But there was no documentation about that. Nothing specific about those issues were attached to anything in the district court until Yellow Rock filed its objections to the magistrate judge's report and recommendations. None of that documentation was attached to its motion to intervene. None of that documentation was attached to its motion to unseal. In the Hernandez decision that this court rendered recently, the would-be intervener in that case, I think, attached a declaration that said, here's why I need these documents. I'm a researcher. I research health care in the United States, and these documents would help me conduct my research. There's nothing like that from Yellow Rock, especially on the public interest. Is this case like Dayus? This case is like Dayus in the sense that I believe that Dayus, the would-be intervener, was seeking to protect his interests. He was looking for discovery to help his unrelated case, and this court said, no, you don't have standing because you haven't articulated the standing. Subsequently to that, courts have said, if you're seeking to obtain those documents to vindicate the public right of access, that does confer standing. But that's not what was before this court in Dayus. I think it was just a straightforward, I need these records for my own private purposes. That's also what this court ruled in Allen-Peroni much more recently. To the district court, Yellow Rock stated it's clear motivation for ensuing these records was its own private use in the ongoing state court litigation against Westlake, and because it lacks standing, this appeal should be dismissed on those grounds. The second independent grounds for denial of Yellow Rock's motion to intervene is the timeliness analysis that we just talked about under Rule 24B. This court has said that the Stallworth factors are how that's evaluated. Now, in Rule 24B opens with on timely motion. Timeliness is a threshold requirement for permissible intervention, and that's an inherently fact-specific issue. Despite the lack of standing that this district court found, it continued on to this timeliness evaluation for completeness sake, and it walked carefully through all the Stallworth factors, which are the factors this court has held govern timeliness. Those are, of course, the length of time, the movement waited to file, the prejudice to the existing parties from any delay, the prejudice to the movement if intervention is denied, and then fourth, any unusual circumstances. The test for timeliness is highly fact-specific, and it's precisely the type of issue that this court defers to district courts to handle, and that is reviewed on abusive discretion grounds. At the end of the road, discretion is the ultimate call here. Yellow Rock has asked this court to essentially relax the federal rules of civil procedure and relax this court's precedent to allow it to intervene in this long closed federal case, but that is not something that this court has blessed. In fact, recently in Hernandez, this court remanded to the district court and told that district court to go back and analyze those facts under the Stallworth factors. As my opponent mentioned, the lower court here actually found in Yellow Rock's favor with the first factor, the amount of time, but it's the two prejudice factors that were dispositive to the lower court, and those are the two I'd like to talk about here. The first is prejudice to the existing parties caused by the delay. Parties are entitled to know when litigation is over. Westlake thought this litigation was over. I think I can speak for everyone involved that when we received the Pacer notification in my inbox, I was surprised to see it came from the Boudreaux case. I thought that case had settled two years ago. The decisions in that case with sealing were made on one playing field, and now Yellow Rock years later is seeking to kind of change the rules. The parties thought the sealed record issue had been long decided. Had they thought differently or known differently, maybe they would have made different choices. Maybe they would have attached fewer exhibits. Maybe they would have attached different . . . Well, if these are private records, then wouldn't you all succeed even if the federal district judge had to take another look? If they are public, why don't you all just give them out and go home? I don't think I'm talking out of school here, but the records, you can see what they are kind of by reference through publicly available things. They're kind of M&A documents referring to the creation of sort of the entities involved and the success or how those entities kind of acquired the assets and liabilities. There's some schedules to those that I think are really what's being sought to be sealed here, some schedules to those exhibits. And then one of the other exhibits that hasn't been talked about is a settlement agreement between Westlake and the plaintiff, Mr. Boudreau in this case. So there's obviously confidential information there about the amount of settlement and things like that. So that's what we're actually talking about. Now, you know, Westlake is not in the habit of just giving these documents out to everybody, but when they become relevant in other litigation, like the case that Yellow Rock is litigating right now against my client, they produce them, they have produced them. So if it becomes relevant in other litigation, Westlake will produce those documents and they have. That's customary. Well, and what about my question to your opponent that why don't you all litigate in the state court about whether things should be publicly filed or sealed? I think that would be not only the correct but the appropriate, you know, arena for that discussion to take place. It never got to that. You know, as my opponent mentioned, his client, when there was initial pushback from Westlake on producing the documents, rather than brief and file a motion to compel to the state court to explain why they needed those documents in the state court case, they turned to the internet and they found this case and said, it might be easier to go get them and unseal them from the federal court case. Let's just go do that. So that discussion was never had with the court in state court for this litigation because rather than file that motion, Yellow Rock turned to this district court and asked it to unseal those long sealed records. What would be your answer to my question about, okay, how long ago can you go when something's been sealed in some other case that was decided as an agreement and so not a trial or anything like that, but a settlement. How long ago and how much to have to go bother all the people in that case that long ago settled to get rid of the case? I mean, that's part of why people settle is they don't want to have the case any longer. Judge, that's a good question, but I don't know that there's a good answer to it. I don't think there is a bright line rule about X number of years or X number of months is too long. That length of time is only one of the four factors this court has given other courts to follow in the Stallworth. So maybe there's a very compelling reason why the party who needs documents in this hypothetical case waited so long and maybe that the prejudice prongs, prejudice factors of the Stallworth test aren't quite as strong. So in that case, maybe several years could have gone by. I don't think there have been cases cited in this circuit where years and years have passed. I know our opponents cited to outside circuit cases where several years have gone by. I'm not familiar with the facts of those cases, but evidently the judges in those cases evaluate under Stallworth and said, whatever reason we've waited so long to ask this question, it's not overly prejudicial to ask it now. I don't think there is a bright line rule for how long we can wait. Ten years is too long, five years is too long. I don't think there's a bright line answer to that question. The other type of prejudice that was dispositive and not discussed by my opponent was the lack of prejudice to the intervener. There is no prejudice to Yellow Rock in this case if it doesn't receive these documents from this court or the lower court. At the time of briefing, Yellow Rock had outstanding discovery aimed at these and other documents to my client. Now when there was conceptually no prejudice because it had another avenue to get those documents, now there is objectively no prejudice. The test is not prejudice to the public. The test is prejudice to the would-be intervener. In that case, it's Yellow Rock. That's the prejudice we have to examine. Why does there have to be an intervention? Why can't the person just come in and say, I love the public and I want to get them some documents? To say that, Your Honor, I think would divert from this court's precedent. Even as recently as Hernandez' decision, this court has said that intervention is the proper way to go about seeking to unseal. All of the Stallworth factor in that analysis that it entails gives rise to a factual picture that the district court treated under its discretion. It would be a real departure from this court's precedent if this court were to say under these circumstances, permissive intervention was required. That's not something this court has done in the context of permissive intervention. Finally, the third independent basis that Judge Walter gave for denying Yellow Rock's intervention was Rule 24B more broadly. Even as setting aside that it found the intervention to be untimely, even if it had found the intervention to be timely under Stallworth, the district court was still well within its broad discretion to deny that intervention. That's because this court says that permissive intervention is wholly discretionary and may be denied even when the requirements of Rule 24B are otherwise satisfied. For an appeal, you're not asked to review the denial of permissive intervention, whether the factors were present, but rather did the trial court commit clear error in denying the motion. This is a quote, most restrictive standard, and this court has said that it would reverse a district court type of decision only under, quote, extraordinary circumstances. Despite recognizing that Yellow Rock's intervention checked the boxes under Rule 24B for a claim and a common question, the district court was still well within its discretion to deny the  The lower court's reasoning for that was that it found that Yellow Rock had an independent basis to protect its interests, namely the pending state court lawsuit, which now it actually has protected those interests. Rule 24B also reiterates, 24B3, also reiterates a prejudice question to the parties and there the court again referred to its evaluation of the prejudice factors under Stallworth and said it's overly prejudicial now to bring these parties in Boudreaux back in years later and re-litigate these issues. This is yet another independent basis that this court can and should affirm. We understand this court's concern in Ben Hoa Lee about the practice of oversealing documents, but courts can only rule on issues properly before them and this is not the right case to grant relief on that issue. The merits of the sealing order are not before this court. This court has not suggested that district courts must reopen closed cases to examine previous sealing orders. Even in the Ben Hoa Lee case, this court did not instruct the lower court to go back and examine the sealing orders. This court certainly has not said that district courts must grant permissive intervention in order to unseal records. In fact, in Daeus it said the opposite. Here, Judge Walter considered the appropriate factors and legal standards and determined that Yellow Rock not only lacked standing, but in fact its motion to intervene was untimely when considered under Stallworth. And while Yellow Rock is eager to litigate the propriety of the sealing documents in this case to this court and the court below, Judge Walter's judgment makes clear that Yellow Rock is not the right party to litigate these issues. District court was well within its discretion to deny permissive intervention here and exercise its broad discretion in doing so and this court should affirm. If there are no further questions, I would rest my brief and arguments made here today. Okay, thank you. We'll hear the rebuttal. Thank you, Your Honor. One thing you did not hear from Westlake, either in their briefs or their oral argument, is any solution to the predicament we have. Documents that were improvidently sealed in plain derogation of Ben-Hawali, June Medical Services, IFG port sealing, how they will ever see the light of day. Ben-Hawali held it was an abuse of discretion for the district court to seal them without articulating the presumption in favor of judicial openness and going through the page by page, line by line. We saw with some of the second batch of materials, which we cited in our brief, that it was simply a cursory four-sentence motion and a one or two-sentence order basically saying motion granted without any sort of adherence to Ben-Hawali. Now, with respect to the Dayas case in Hernandez, this court confirmed that Dayas does not categorically foreclose intervention by non-parties to unseal records, held that that argument, that approach would be untenable. There also was a key carve-out in the language of Dayas. In Dayas, the court said that absent some underlying right creating standing for the movements, a strictly private interest would not suffice. Here, we have articulated a public interest and it's inappropriate for the court to impose a credibility test, if you will, in that regard. Remember, Holy Land said that the documents belong to the public and that the motivations of the party seeking unsealing do not matter. As far as the, also with respect to Dayas, we went back and pulled the appellate briefs because the opinion itself was a little ambiguous as to what exactly they sought unsealing of. The brief is 1992 Westlaw 12128687. It said that they moved to intervene in the lawsuit for the express purpose of having the protective order lifted from all the documentary evidence and deposition testimony from the instant lawsuit. This is not that. We are not seeking to open up discovery. This concerns judicial records, adjudicative records that were central to a summary judgment ruling in which the public has a common law right of interest, as this court emphasized in Ben-Hawali. If we don't enforce this, who will? With respect to the question about is this very limitless principle, again, courts have gone through some of the cases have cited instances where parties have gone back several, several years into a closed case. As far as the burden on the parties, we think that that is vastly overstated. In fact, the plaintiffs and third party defendants in the underlying case didn't even bother to oppose. With respect to the question of whether this is moot insofar as we've received the documents, no, it is not moot because ultimately we seek to unseal the documents. The documents remain sealed, and if it's affirmed, they will remain sealed potentially into perpetuity. That is a clear affront to the rule set forth in Ben-Hawali, June Medical Services, IFG Port Holdings. Holy Land, I've talked about that. That confirmed the key language there. We disagree with any suggestion that the public's right of access to judicial records is relevant only when asserted by a third party, such as a journalist with no direct stake in the proceedings. The principle of public access to judicial records furthers not only the interests of the outside public, but also the integrity of the judicial system itself. With respect, I also want to go back to the prejudice angle. The key language on the Ford case that I've referenced, the inquiry is the prejudice created by the intervener's delay in seeking to intervene after it learns of its interest, not prejudice to existing parties if intervention is allowed. I see my time has expired. Thank you both sides. The case is now under submission. We have concluded for today's oral arguments. We'll be back tomorrow at 9 a.m. Thank you.